1
2
3
4

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON

5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

LAWRENCE HARTFORD; DOUGLAS
MITCHELL; BRETT BASS; SPORTING
SYSTEMS VANCOUVER, INC.; SECOND
AMENDMENT FOUNDATION, INC.; and
FIREARMS POLICY COALITION, INC.,

       *Plaintiffs*,

    v.

BOB FERGUSON, in his official capacity as
Washington State Attorney General; JOHN R.
BATISTE, in his official capacity as Chief of the
Washington State Patrol; JOHN GESE, in his
official capacity as Sheriff for Kitsap County,
Washington; CLAYTON MYERS, in his official
capacity as Sheriff for Kittitas County,
Washington; JOHN HORCH, in his official
capacity as Sheriff for Clark County,
Washington; ADAM FORTNOY, in his official
capacity as Sheriff for Snohomish County,
Washington; CHAD M. ENRIGHT, in his
official capacity as County Prosecutor for Kitsap
County, Washington; GREG ZEMPEL, in his
official capacity as County Prosecutor for
Kittitas County, Washington; TONY GOLIK,
in his official capacity as County Prosecutor for
Clark County, Washington; and JASON
CUMMINGS, in his official capacity as County
Prosecutor for Snohomish County, Washington,

       *Defendants*.

No. 3:23-cv-5364

COMPLAINT

ARD LAW GROUP PLLC

P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

Lawrence Hartford, Doug Mitchell, Brett Bass, Sporting Systems Vancouver Inc., Second Amendment Foundation, and Firearms Policy Coalition, Inc., by and through the undersigned attorneys, file this Complaint against the above-captioned Defendants, in their official capacities as the officials responsible under Washington law for administering and enforcing the State's laws and regulations governing the manufacturing, importation, distribution, sale, and offering for sale of commonly possessed semiautomatic rifles tendentiously and inaccurately labeled "assault weapons." Plaintiffs seek declaratory and injunctive relief: a declaration that Washington's ban on manufacturing, importing, distributing, selling, or offering for sale commonly possessed semiautomatic rifles violates the Second and Fourteenth Amendments and an injunction compelling Defendants to refrain from enforcing the invalid ban. In support of their Complaint against Defendants, Plaintiffs hereby allege as follows:

## I. Introduction

1.      The Second Amendment to the United States Constitution guarantees "the right of the people to keep and bear Arms." U.S. Const. amend. II. This Amendment guarantees a fundamental right to keep and bear common firearms for defense of self and family and for other lawful pursuits.

2.      But the State has enacted, and Defendants have authority to enforce, a flat prohibition on the manufacture, import, distribution, sale, and offering for sale of many common firearms—tendentiously labeled "assault weapons"—by ordinary citizens ("the Washington Ban"), making it a crime for law-abiding citizens to exercise their fundamental right to keep and bear such arms. *See* SHB 1240 § 3.

3.      In so doing, the State of Washington has criminalized one of the most common and important means by which its citizens can exercise their fundamental right to self-defense. By banning manufacturing, importation, distribution, and sale of common semiautomatic rifles, the State has barred law-abiding residents from legally acquiring common rifles and has deprived them of an effective means of self-defense and their fundamental individual right to keep and bear arms.

Complaint - 1

*Hartford v. Ferguson*, No. 3:23-cv-5364

Ard Law Group PLLC

P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

4. The plain text of the Second Amendment covers the conduct in which the Plaintiffs wish to engage because it "extends, prima facie, to all instruments that constitute bearable arms, even those that were not in existence at the time of the founding." *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111, 2132 (2022) (quoting *District of Columbia v. Heller*, 554 U.S. 570, 582 (2008)). By prohibiting Plaintiffs from possessing and carrying popular semiautomatic firearms, Washington has prevented them from "keeping and bearing Arms" within the meaning of the Amendment's text. As a result, "[t]o justify its regulation, the government . . . must demonstrate that the regulation is consistent with this Nation's tradition of firearm regulation." *Bruen*, 142 S. Ct. at 2126.

5. Here, Defendants will be unable to meet their burden. *Heller* and *Bruen* have already established the only historical tradition that can remove a firearm from the Second Amendment's protective scope—the tradition of banning dangerous and unusual weapons. *Heller*, 554 U.S. at 627; *Bruen*, 142 S. Ct. at 2143. But to be banned, a firearm must be both dangerous and unusual. *Caetano v. Massachusetts*, 577 U.S. 411, 417 (2016) (Alito, J., concurring). Arms that are in common use—as the firearms Washington has banned unquestionably are—are neither unusual nor dangerous. Therefore, they cannot be banned, and the Washington laws challenged herein must be declared unconstitutional.

6. Plaintiffs Doug Mitchell, Brett Bass, Lawrence Hartford, Sporting Systems Vancouver, Inc., Second Amendment Foundation, and Firearms Policy Coalition, Inc., bring this action to vindicate the rights that Defendants infringe.

## II. Jurisdiction And Venue.

7. This Court has subject-matter jurisdiction over Plaintiffs' claim under 28 U.S.C. §§ 1331 and 1343.

8. Plaintiffs seek remedies under 28 U.S.C. §§ 1651, 2201, and 2202 and 42 U.S.C. §§ 1983 and 1988, as well as *Ex parte Young*, 209 U.S. 123 (1908).

9. Venue lies in this Court under 28 U.S.C. § 1391(b)(1) & (b)(2).

Ard Law Group PLLC

P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

### III. Parties.

10. Plaintiff Doug Mitchell is a natural person and a citizen of Kittitas County, Washington. He owns firearms that qualify as "assault weapons" under the Washington Ban. He intends to continue purchasing semiautomatic rifles which qualify as "assault weapons." However, because of the Washington Ban, he has been forced to abandon these plans to avoid facing prosecution for violating the law. Mitchell is a member of Plaintiffs SAF and FPC.

11. Plaintiff Lawrence Hartford is a natural person and a citizen of Kitsap County, Washington. He owns firearms that qualify as "assault weapons" under the Washington Ban. He intends to continue purchasing semiautomatic rifles which qualify as "assault weapons." However, because of the Washington Ban, he has been forced to abandon these plans to avoid facing prosecution for violating the law. Hartford is a member of Plaintiffs SAF and FPC.

12. Plaintiff Brett Bass is a natural person and a citizen of Snohomish County, Washington. He owns firearms that qualify as "assault weapons" under the Washington Ban. He intends to continue purchasing semiautomatic rifles which qualify as "assault weapons." However, because of the Washington Ban, he has been forced to abandon these plans to avoid facing prosecution for violating the law. Bass is a member of Plaintiffs SAF and FPC.

13. Plaintiff Sporting Systems Vancouver, Inc. is a federally licensed firearm dealer located in Clark County, Washington. Sporting Systems specializes in high end rifles, pistols, and shotguns as well as parts, optics, and accessories. Because of the Washington Ban, Sporting Systems has been forced to stop selling those rifles to civilians and to limit its sale of these items to government purchasers exempted from the state-wide ban. That has substantially constricted Sporting Systems' market and harm its business.

14. Plaintiff Second Amendment Foundation ("SAF") is a nonprofit educational foundation incorporated in 1974 under the laws of Washington with its principal place of business in Bellevue, Washington. SAF is a 501(c)(3) organization under Title 26 of the United States Code. SAF's mission is to preserve the individual constitutional right to keep and bear arms through

Ard Law Group PLLC

P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

public education, judicial, historical, and economic research, publishing, and legal-action programs focused on the civil right guaranteed by the Second Amendment to the United States Constitution. SAF has members nationwide, including in the State of Washington. SAF brings this action on behalf of its members, including the individual Plaintiffs, who are adversely and directly harmed by Defendants' enforcement of the laws, regulations, policies, practices, and customs challenged herein.

15.     Plaintiff Firearms Policy Coalition, Inc. ("FPC") is a 501(c)(4) non-profit organization incorporated under the laws of Delaware with its principal place of business in Sacramento, California. The purposes of FPC include defending and promoting the People's rights—especially the fundamental, individual Second Amendment right to keep and bear arms—advancing individual liberty, and restoring freedom. FPC serves its members and the public through legislative advocacy, grassroots advocacy, litigation and legal efforts, research, education, outreach, and other programs. FPC's members reside both within and outside Washington brings this action on behalf of its members, including the individual Plaintiffs, who are adversely and directly harmed by Defendants' enforcement of the laws, regulations, policies, practices, and customs challenged herein.

16.     Defendant Bob Ferguson is sued in his official capacity as Washington State Attorney General. As Attorney General, Ferguson has the authority to assist in the prosecution of crimes, including violations of the Washington Ban, and to institute and prosecute actions on behalf of the state that are "necessary in the execution of the duties of any state officer." RCW § 43.10.030.

17.     Defendant John R. Batiste is sued in his official capacity as the Chief of the Washington State Patrol. As Chief of the State Patrol, Batiste has the power and duty to enforce the law, including the Washington Ban, throughout the state. RCW § 43.43.030.

18.     Defendant Clayton Myers is sued in his official capacity as Sheriff for Kittitas County, Washington. As Sheriff, Myers is responsible for arresting and imprisoning "all persons

Complaint - 4
*Hartford v. Ferguson*, No. 3:23-cv-5364

Ard Law Group PLLC
P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

guilty of public offenses" in Kittitas County, including individuals who violate the Washington Ban. RCW § 36.28.010.

19.     Defendant John Horch is sued in his official capacity as Sheriff for Clark County, Washington. As Sheriff, Horch is responsible for arresting and imprisoning "all persons guilty of public offenses" in Clark County, including individuals who violate the challenged ban. *Id.*

20.     Defendant John Gese is sued in his official capacity as Sheriff for Kitsap County, Washington. As Sheriff, Gese is responsible for arresting and imprisoning "all persons guilty of public offenses" in Kitsap County, including individuals who violate the challenged ban. *Id.*

21.     Defendant Adam Fortney is sued in his official capacity as Sheriff for Snohomish County, Washington. As Sheriff, Fortney is responsible for arresting and imprisoning "all persons guilty of public offenses" in Snohomish County, including individuals who violate the challenged ban. *Id.*

22.     Defendant Greg Zempel is sued in his official capacity as County Prosecutor for Kittitas County. As County Prosecutor, Zempel is responsible for "prosecut[ing] all criminal and civil actions" including for violations of the challenged ban, "in which the state or the county may be a party." RCW § 36.27.020.

23.     Defendant Tony Golik is sued in his official capacity as County Prosecutor for Clark County. As County Prosecutor, Golik is responsible for "prosecut[ing] all criminal and civil actions" including for violations of the challenged ban, "in which the state or the county may be a party." *Id.*

24.     Defendant Dan Chad M. Enright is sued in his official capacity as County Prosecutor for Kitsap County. As County Prosecutor, Enright is responsible for "prosecut[ing] all criminal and civil actions" including for violations of the challenged ban, " in which the state or the county may be a party." *Id.*

25.     Defendant Jason Cummings is sued in his official capacity as County Prosecutor for Snohomish County. As County Prosecutor, Cummings is responsible for "prosecut[ing] all

Ard Law Group PLLC

P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

criminal and civil actions" including for violations of the challenged ban, "in which the state or the county may be a party." *Id.*

## IV. Factual Allegations.

**A.      Washington's Ban on Common Semiautomatic Rifles.**

26.      On April 25, 2023 Governor Jay Inslee signed Substitute House Bill 1240 (hereinafter cited as "Act"), which made it illegal for any person in Washington to, with a handful of exceptions, "manufacture, import, distribute, sell, or offer for sale any assault weapon," Act § 3(1). The State identifies a firearm as an "assault weapon" based on the presence of certain characteristics. RCW § 9.41.010(2) It also lists by name several models of banned "assault rifles". *Id.*

27.      By the terms of its own title, this criminal prohibition provides only "limited exemptions applicable to licensed firearm manufacturers and dealers for purposes of sale to armed forces branches and law enforcement agencies and for purposes of sale or transfer outside the state, and to inheritors." Act at Preamble.

28.      The Act exempts from its tendentious label of "assault weapons" only "antique firearms, any firearm that has been made permanently inoperable, [and] any firearm that is manually operated by bolt, pump, lever, or slide action," but it makes commerce in many of the most common firearms in Washington—and indeed the country—illegal. RCW § 9.41.010(2)(c).

29.      As a result, the Act makes it impossible for a law-abiding resident of Washington to lawfully acquire those rifles by making it illegal to either sell them in-state or bring them in from another state.

30.      Violating the "assault weapons" ban is a gross misdemeanor, punishable by up to 364 days imprisonment and a fine of up to $5,000. Act § 3(4); RCW § 9A.20.021(2).

31.      The Act takes effect immediately upon enactment. Act § 6.

**B.      Washington Has Criminalized A Common And Important Means Of Self-Defense.**

32.     Among other things, the Ban defines as an "assault weapon" and bans any semiautomatic center fire rifle with the capacity to accept a detachable magazine, if it has any one of the following features:

> (A) A grip that is independent or detached from the stock that protrudes conspicuously beneath the action of the weapon. The addition of a fin attaching the grip to the stock does not exempt the grip if it otherwise resembles the grip found on a pistol;
> (B) Thumbhole stock;
> (C) Folding or telescoping stock;
> (D) Forward pistol, vertical, angled, or other grip designed for use by the nonfiring hand to improve control;
> (E) Flash suppressor, flash guard, flash eliminator, flash hider, sound suppressor, silencer, or any item designed to reduce the visual 17 or audio signature of the firearm;
> (F) Muzzle brake, recoil compensator, or any item designed to be affixed to the barrel to reduce recoil or muzzle rise;
> (G) Threaded barrel designed to attach a flash suppressor, sound suppressor, muzzle break, or similar item;
> (H) Grenade launcher or flare launcher; or
> (I) A shroud that encircles either all or part of the barrel designed to shield the bearer's hand from heat, except a solid forearm of a stock that covers only the bottom of the barrel.

RCW § 9.41.010(2)(a)(iv).

33.     Further, the Statute bans any "conversion kit, part, or combination of parts, from which an assault weapon can be assembled or from which a firearm can be converted into an assault weapon if those parts are in the possession or under the control of the same person." RCW § 9.41.010(2)(a)(iii).

34.     Finally, the Statute lists specific banned firearms "regardless of which company produced and manufactured the firearm":

> i.      AK-47 in all forms
> ii.     AK-74 in all forms
> iii.    Algimec AGM-1 type semiautomatic
> iv.     American Arms Spectre da semiautomatic carbine
> v.      AR15, M16, or M4 in all forms
> vi.     AR 180 type semiautomatic
> vii.    Argentine L.S.R. semiautomatic
> viii.   Australian Automatic
> ix.     Auto-Ordnance Thompson M1 and 1927 semiautomatics
> x.      Barrett .50 cal light semiautomatic

Ard Law Group PLLC

P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

xi.      Barrett .50 cal M87
xii.     Barrett .50 cal M107A1
xiii.    Barrett REC7
xiv.     Beretta AR70/S70 type semiautomatic
xv.      Bushmaster Carbon 15
xvi.     Bushmaster ACR
xvii.    Bushmaster XM-15
xviii.   Bushmaster MOE
xix.     Calico models M100 and M900
xx.      CETME Sporter
xxi.     CIS SR 88 type semiautomatic
xxii.    Colt CAR 15
xxiii.   Daewoo K-1
xxiv.    Daewoo K-2
xxv.     Dragunov semiautomatic
xxvi.    Fabrique Nationale FAL in all forms
xxvii.   Fabrique Nationale F2000
xxviii.  Fabrique Nationale L1A1 Sporter
xxix.    Fabrique Nationale M249S
xxx.     Fabrique Nationale PS90
xxxi.    Fabrique Nationale SCAR
xxxii.   FAMAS .223 semiautomatic
xxxiii.  Galil
xxxiv.   Heckler & Koch G3 in all forms
xxxv.    Heckler & Koch HK-41/91
xxxvi.   Heckler & Koch HK-43/93
xxxvii.  Heckler & Koch HK94A2/3
xxxviii. Heckler & Koch MP-5 in all forms
xxxix.   Heckler & Koch PSG-1
xl.      Heckler & Koch SL8
xli.     Heckler & Koch UMP
xlii.    Manchester Arms Commando MK-45
xliii.   Manchester Arms MK-9
xliv.    SAR-4800
xlv.     SIG AMT SG510 in all forms
xlvi.    SIG SG550 in all forms
xlvii.   SKS
xlviii.  Spectre M4
xlix.    Springfield Armory BM-59
l.       Springfield Armory G3
li.      Springfield Armory SAR-8
lii.     Springfield Armory SAR-48
liii.    Springfield Armory SAR-3
liv.     Springfield Armory M-21 sniper
lv.      Springfield Armory M1A

Ard Law Group PLLC

P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

|       |                             |
|-------|-----------------------------|
| lvi.  | Smith & Wesson M&P 15       |
| lvii. | Sterling Mk 1               |
| lviii.| Sterling Mk 6/7             |
| lix.  | Steyr AUG                   |
| lx.   | TNW M230                    |
| lxi.  | FAMAS F11                   |
| lxii. | Uzi 9mm carbine/rifle       |

RCW § 9.41.010(a)(ii).

35.     The banned semiautomatic rifles "traditionally have been widely accepted as lawful possessions," *see Staples v. United States*, 511 U.S. 600, 612 (1994) (so categorizing an AR-15 semiautomatic rifle), and they are in common use, see *Heller v. Dist. of Columbia*, 670 F.3d 1244, 1261 (D.C. Cir. 2011) ("*Heller II*") ("We think it clear enough in the record that semi-automatic rifles . . . are indeed in 'common use' as the plaintiffs contend.").

36.     Rifles built on an "AR-style" platform are a paradigmatic example of the type of arm Washington bans ("AR" is short for ArmaLite Rifle; ArmaLite originally designed the platform).

37.     AR-15 rifles are among the most popular firearms in the nation, and they are owned by millions of Americans. A recent survey of gun owners indicates that about 24.6 million Americans have owned AR-15 or similar modern semiautomatic rifles, with the "median owner" identified as owning a single rifle. William English, *2021 National Firearms Survey: Updated Analysis Including Types of Firearms Owned* at 2, 33 (May 13, 2022), https://bit.ly/3yPfoHw. A recent industry publication similarly estimated that over 24 million AR-15 or similar rifles have been produced for the U.S. market. Nat'l Shooting Sports Found., *Commonly Owned: NSSF Announces Over 24 Million MSRs in Circulation*, (July 20, 2022), https://bit.ly/3QBXiyv. And a recent Washington Post-Ipsos poll reached similar results, finding that 20% of gun owners owned an AR-15 or similar type of rifle. Washington Post-Ipsos, *Most AR-15 gun owners own AR-15s to protect their self, family, and property* (March 27, 2023), *available at* https://bit.ly/40RtIKz.

Complaint - 9

*Hartford v. Ferguson*, No. 3:23-cv-5364

Ard Law Group PLLC

P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

38.     Approximately 20% of all firearms sold in recent years were rifles of the type banned by Washington. Nat'l Shooting Sports Found., Inc., *Firearms Retailer Survey Report, 2021* at 9, *available at* https://bit.ly/3gWhI8E. And in 2020, more than 20 million adults participated in target or sport shooting with semiautomatic rifles like those banned by Washington. Nat'l Shooting Sports Found., Inc., *Sport Shooting Participation in the U.S. in 2020* at iii, *available at* https://bit.ly/3sPuEQl (last accessed Mar. 23, 2023).

39.     The banned semiautomatic firearms, like all other semiautomatic firearms, fire only one round for each pull of the trigger. They are not machine guns. *Staples*, 511 U.S. at 620 n.1. What is more, the designation "assault weapons" is a misnomer, "developed by anti-gun publicists" in their crusade against lawful firearm ownership. *Stenberg v. Carhart*, 530 U.S. 914, 1001 n.16 (2000) (Thomas, J., dissenting).

40.     A comparison to firearms used by the military demonstrates just how disingenuous the "assault weapon" moniker is. According to the United States Army, for example, the maximum effective rate of fire for various M4- and M16-series firearms is between forty-five and sixty-five rounds per minute in semiautomatic mode—the only mode available to an AR-15 user. *Rifle Marskmanship: M16-/M4-Series Weapons*, Dep't of the Army 2-1 tbl. 2-1 (2008), https://bit.ly/3pvS3SW. In contrast, an M16 can fire 150-200 rounds per minute in automatic mode. *Id.*

41.     Central among the common uses of semiautomatic firearms banned in Washington is self-defense. A majority of owners of AR-style rifles said that they owned their firearms for self-defense. English, *2021 National Firearms Survey*, supra, at 34 (61.9% owned for home defense; 34.6% owned for defense outside the home); Washington Post-Ipsos Poll, supra at 1 (65% of owners said protection of self, family, and property was a "major reason" for owning an AR-15 style rifle, and another 26% said it was a "minor reason"). Owners of AR-15s and other similar rifles rated "Home/self-defense" as over 8 out of 10 in importance for owning them, the second-highest rating

Complaint - 10

*Hartford v. Ferguson*, No. 3:23-cv-5364

Ard Law Group PLLC

P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

after recreational target shooting. Nat'l Shooting Sports Found., Inc., *Modern Sporting Rifle: Comprehensive Consumer Report* 18 (July 14, 2022), *available at* https://bit.ly/3SSrVjM.

42.     An AR-15 rifle is an optimal firearm to rely on in a self-defense encounter. Most AR-style firearms are chambered for 5.56x45mm NATO, which is similar to .223 Remington ammunition. This is a relatively inexpensive and common cartridge that is particularly well suited for home-defense purposes because it has sufficient stopping power in the event of a home intrusion, but quickly loses velocity after passing through a target and other objects, thus decreasing the chance that an errant shot will strike an unintended target. Although most pistol rounds have less muzzle velocity than a 5.56x45mm NATO round, they have greater mass, maintain velocity after passing through walls and other objects, and pose substantially greater risks to unintended targets in, or even outside, the home. *See* David B. Kopel,, *How powerful are AR rifles?*, The Volokh Conspiracy (Feb. 27, 2023) https://bit.ly/3nE0dgG. And bullets fired in larger hunting rifle calibers, like .30-06, are much more powerful still. *See* Nat'l Shooting Sports Found., Inc.*, Modern Sporting Rifle: The Facts*, *available at* https://bit.ly/42VayVO.

43.     It has been argued that the .223 Remington/5.56x45mm NATO rounds are incredibly destructive, and that bans like Washington's are necessary for that reason. *See Delaware State Sportsmen's Assoc., Inc. v. Delaware Dep't of Safety & Homeland Sec'y*, --- F. Supp. 3d ----, 2023 WL 2655150, at *10 (D. Del. Mar. 27, 2023). But there are two major flaws with this claim. The first, and most basic, is that the Washington Ban, like the other laws it mimics, does not say anything about what ammunition may or may not be used. Firearms that use the .223 round but lack the banned features may still be bought in Washington, and firearms that have the banned features but shoot even much smaller ammunition are still banned. If the concern is the ammunition, the Washington Ban does not address it.

44.     Second, the destructive power of these rounds is greatly overstated. Claims that these cartridges "can decapitate or dismember . . . "can be traced to a U.S. military report from Vietnam in 1962" which described "theatrically grotesque wounds" which the Army's Wound

Complaint - 11

*Hartford v. Ferguson*, No. 3:23-cv-5364

Ard Law Group PLLC

P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

Ballistic Laboratory tried but could not ever replicate "no matter what they did." Kopel, *How powerful are AR rifles*, supra. Combat veterans with significant experience with the ammunition in question have derided the claims that these are "powerful" rounds, noting instead that the rounds are often considered by soldiers to be *too small* to be adequate for use in war. *See*, Maj. Anthony F. Milavic (U.S.M.C. Ret.), *It's the Cartridge, Stupid—Not the Rifle*, PROCEEDINGS, U.S. NAVAL INSTITUTE (Aug. 2002), *available at* https://bit.ly/3nAaPNJ.

45.     Like the AR-15 generally, many of the specific features banned by Washington aid home defense. A flash suppressor, for example, not only reduces the chances that a home-invader will identify his victim's position but also protects a homeowner against momentary blindness when firing in self-defense. David B. Kopel, *Rational Basis Analysis of "Assault Weapon" Prohibition*, 20 J. CONTEMP. L. 381, 397 (1994).

46.     Folding and telescoping stocks increase the likelihood of successful home defense by permitting safe storage of defense instruments in accessible spaces and making the rifle maneuverable in confined spaces. *Id*. at 398–99. A telescoping stock also allows a firearm to be better fitted to an individual shooter, thereby enhancing the ability of an individual to use the firearm safely and effectively.

47.     Pistol grips and improve accuracy and reduce the risk of stray shots by stabilizing the firearm while firing from the shoulder. *Id*. at 396.

48.     Thumbhole stocks serve precisely the same function. James B. Jacobs, *Why Ban "Assault Weapons"?*, 37 CARDOZO L. REV. 681, 690 (2015).

49.     Most common semiautomatic rifles, including those banned under Washington's law, can accept a detachable magazine. Detachable magazines not only assist law-abiding shooters in reloading their firearm in stressful defense circumstances, but in the case of some platforms, including the common AR-15, they are required to safely and quickly remedy malfunctions.

50.     Encounters with criminal intruders in the home, where the AR-style rifle may be most useful, are not uncommon. For instance, according to a report by the U.S. Department of

Justice, Bureau of Justice Statistics, household members are present for almost a third of all burglaries and become victims of violent crimes in more than a quarter of those cases. Studies on the frequency of defensive gun uses in the United States have determined that there are up to 2.5 million instances each year in which civilians use firearms to defend themselves or their property. Gary Kleck, Marc Gertz, *Armed Resistance to Crime: The Prevalence and Nature of Self-Defense with a Gun*, 86 J. OF CRIM. L. & CRIMINOLOGY 150, 164 (1995); see also English, *National Firearms Survey*, supra at 9 (finding 31.1% of firearms owners, or approximately 25.3 million adult Americans, have used a firearm in self-defense and there are 1.67 million defensive firearm uses a year). Both Kleck and English found that over 100,000 of these annual defensive gun uses were with rifles. See Kleck, *Armed Resistance to Crime*, supra, at 185, English, *2021 National Firearms Survey*, supra, at 11.

51.     Other common, lawful uses of the banned firearms are hunting and sport. At least a third of all gun-owners use a firearm for hunting or sport shooting, and recreational target shooting is a top reason for owning semiautomatic rifles like those banned by Washington.

52.     Here, again, the banned features of semiautomatic firearms—mischaracterized as assault weapons—serve lawful purposes. Folding and telescoping stocks, for example, allow for safe transportation, including in a hiking pack, an ATV, or a boat. These stocks also ease carriage over long distances while hunting.

53.     Both telescoping stocks and protruding grips open hunting and sport-shooting to those for whom recoil poses a challenge. Detachable magazines have the same benefits in hunting and sport-shooting as they do in home defense—improved reloading and remedying of malfunctions. And flash suppressors promote accuracy in target-shooting and hunting (especially at dawn).

54.     By contrast, one use that is not common for so-called assault weapons is crime. According to a widely cited 2004 study, these arms "are used in a small fraction of gun crimes." Christopher Koper, et al., *Updated Assessment of the Federal Assault Weapons Ban: Impacts on Gun*

Complaint - 13

*Hartford v. Ferguson*, No. 3:23-cv-5364

Ard Law Group PLLC

P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

*Markets and Gun Violence, 1994-2003* (2004), U.S. DEP'T OF JUST., *available at* https://bit.ly/3hZiy5v. This has long been true. Gary Kleck, TARGETING GUNS: FIREARMS AND THEIR CONTROL 112 (1997) (evidence indicates that "well under 1% [of crime guns] are 'assault rifles.'"). Indeed, according to FBI statistics in 2021 there were only 510 homicides known to be committed with rifles of any type, compared to 5,363 with handguns, 1,018 with knives or other cutting instruments, 510 with personal weapons (hands, feet, etc.) and 267 with blunt objects. *U.S. Homicide Offense characteristics: Type of Weapon Involved by Offense*, FBI Crime Data Explorer. (2023), *available at* https://bit.ly/40NHSMC.

55.     The rifles that Washington bans as "assault weapons" are, in all respects, ordinary semiautomatic rifles. To the extent they are different from other semiautomatic rifles, their distinguishing features make them safer and easier to use. But even if they are considered as a separate group of "assault weapons," they cannot be banned because they are not dangerous and unusual.

56.     The arms banned as "assault weapons" by Washington are common by all counts: (1) They are common categorically, as they are all semiautomatic in their function and operation; (2) they are common characteristically, as they are all popular configurations of arms (e.g., rifles) with varying barrel lengths and common characteristics like pistol grips; and (3) they are common jurisdictionally, lawful to possess and use in the vast majority of states now and throughout relevant history, for a wide variety of lawful purposes that include self-defense, proficiency training, competition, recreation, hunting, and collecting.

57.     The Statute's ban on manufacturing, importing, distributing, selling, or offering for sale an "assault weapon" is, therefore, a ban on keeping and bearing semiautomatic firearms that are commonly possessed and used for lawful purposes, including self-defense in the home.

## C.     Statement Of Facts Relating To Lawrence Hartford.

58.     The foregoing paragraphs are hereby incorporated herein as if set forth in full.

59.     Plaintiff Lawrence Hartford is an adult resident of Kitsap County, Washington.

COMPLAINT - 14
*HARTFORD v. FERGUSON*, NO. 3:23-cv-5364

ARD LAW GROUP PLLC
P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

60.     Mr. Hartford is a peaceable, law-abiding, responsible citizen.

61.     Mr. Hartford is a member of Plaintiffs SAF and FPC.

62.     Mr. Hartford would buy a BCM M4 Mod 2, an AR-type firearm, but he cannot do so because the enactment of the Ban has destroyed the legal market for that firearm.

63.     Additionally, Mr. Hartford enjoys target shooting on his property, and in an effort to minimize noise he prefers to use firearms that can be fitted with suppressors. When he purchases firearms, he prefers to buy firearms with threaded barrels designed to accept a suppressor, but because of the law challenged here, he will not be able to do so.

64.     It is Mr. Hartford's present intention and desire to purchase additional semiautomatic rifles of the kind that are banned by Washington, were it lawful to do so. Because of Washington's Ban, he cannot lawfully purchase additional semiautomatic rifles, because the existence of the Ban, and Defendants' enforcement of it, has extinguished the legal market for those items in Washington, and made it unlawful for Mr. Mitchell to import them himself.

**D.      Statement Of Facts Relating To Doug Mitchell.**

65.     The foregoing paragraphs are hereby incorporated herein as if set forth in full.

66.     Plaintiff Doug Mitchell is an adult resident of Kittitas County, Washington.

67.     Mr. Mitchell is a peaceable, law-abiding, responsible citizen.

68.     Mr. Mitchell is a member of Plaintiffs SAF and FPC.

69.     Mr. Mitchell would purchase a Sig Sauer MCX Spear LT, an AR-type firearm, but he cannot do so because the enactment of the Ban has destroyed the legal market for that firearm.

70.     It is Mr. Mitchell's present intention and desire to purchase additional semiautomatic rifles of the kind that are banned by Washington, were it lawful to do so. Because of Washington's Ban, he cannot lawfully purchase additional semiautomatic rifles, because the existence of the Ban, and Defendants' enforcement of it, has extinguished the legal market for those items in Washington, and made it unlawful for Mr. Mitchell to import them himself.

**E.     Statement Of Facts Relating To Brett Bass.**

71.     The foregoing paragraphs are hereby incorporated herein as if set forth in full.

72.     Plaintiff Brett Bass is an adult resident of Snohomish County, Washington.

73.     Mr. Bass is a peaceable, law-abiding, responsible citizen.

74.     Mr. Bass is a member of Plaintiffs SAF and FPC.

75.     Mr. Bass owns a semiautomatic pistol which he would equip with a threaded barrel, but because the law challenged herein makes manufacturing a so-called "assault weapon" unlawful, he will be unable to do so.

76.     Additionally, Mr. Bass would buy a Palmetto State Armory AK-103, but he cannot do so because the enactment of the Ban has destroyed the legal market for that firearm.

77.     It is Mr. Bass's present intention and desire to purchase additional semiautomatic rifles of the kind that are banned by Washington, were it lawful to do so. Because of Washington's Ban, he cannot lawfully purchase additional semiautomatic rifles, because the existence of the Ban, and Defendants' enforcement of it, has extinguished the legal market for those items in Washington, and made it unlawful for Mr. Mitchell to import them himself.

**F.     Statement Of Facts Relating To Sporting Systems Vancouver, Inc.**

78.     The foregoing paragraphs are hereby incorporated herein as if set forth in full.

79.     Plaintiff Sporting Systems Vancouver, Inc. is a corporation located in Clark County, Washington. Sporting Systems Vancouver, Inc. is owned and operated by Dan Mitchell, a member of Plaintiffs SAF and FPC.

80.     Sporting Systems Vancouver, Inc. is a federally licensed firearm dealer. Before the Washington Ban, every month it sold hundreds of rifles and lower receivers that have been erroneously labeled "assault weapons" by Washington to law-abiding citizens in the State.

81.     It is Sporting Systems Vancouver, Inc.'s present intention and desire to continue to sell banned semiautomatic rifles. Because of Washington's Ban, however, it has been forced to stop selling many common semiautomatic rifles to members of the general public. As a result,

Complaint - 16

*Hartford v. Ferguson*, No. 3:23-cv-5364

Ard Law Group PLLC

P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

Sporting Systems Vancouver, Inc. is losing and will lose profits from sales of common semiautomatic rifles as a direct result of Washington's Ban.

82.     In addition to risking prosecution, Sporting Systems Vancouver, Inc. could also jeopardize its federal firearms license if it were to violate the Ban. As a vendor who is harmed by the "assault weapons" ban, Sporting Systems Vancouver, Inc. challenges the ban to vindicate the Second Amendment protected rights of its itself and customers. *See Teixeira v. County of Alameda*, 873 F.3d 670, 678 (9th Cir. 2017); *Ezell v. City of Chicago*, 651 F.3d 684 (7th Cir. 2011).

## V. CAUSE OF ACTION.

**A.     Count One: 42 U.S.C. § 1983 & *Ex parte Young*, 209 U.S. 123 (1908)- Deprivation of Plaintiffs' Rights under the Second and Fourteenth Amendments of the United States Constitution.**

83.     Plaintiffs incorporate by reference the foregoing paragraphs as if fully set forth herein.

84.     The Second Amendment to the United States Constitution provides: "A well-regulated Militia being necessary to the security of a free State, the right of the people to keep and bear Arms shall not be infringed."

85.     The Second Amendment is fully applicable to the States through the Fourteenth Amendment. *McDonald v. City of Chicago*, 561 U.S. 742, 750 (2010); *id.* at 805 (Thomas, J., concurring).

86.     "Just as the First Amendment protects modern forms of communications, and the Fourth Amendment applies to modern forms of search, the Second Amendment extends, prima facie, to all instruments that constitute bearable arms, even those that were not in existence at the time of the founding." *Heller*, 554 U.S. at 582 (citations omitted).

87.     The firearms at issue in this case are the sorts of bearable arms in common use for lawful purposes that law-abiding people possess at home by the millions. They are, therefore, neither dangerous nor unusual and they cannot be banned.

COMPLAINT - 17
*HARTFORD V. FERGUSON*, No. 3:23-cv-5364

ARD LAW GROUP PLLC

P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

88.    42 U.S.C. § 1983 creates a cause of action against state actors who deprive individuals of federal constitutional rights under color of state law.

89.    *Ex parte Young*, 209 U.S. 123 (1908) provides an exception to state sovereign immunity by permitting parties to sue state officials in their official capacity for prospective injunctive and declaratory relief from unconstitutional state laws.

90.    Plaintiffs are peaceable citizens of Washington and the United States who wish to purchase and possess firearms that have been banned as "assault weapons" by Washington.

91.    Outright bans on manufacturing, distributing, importing, selling, or offering for sale common semiautomatic rifles violate the Second Amendment by prohibiting all Washington residents from acquiring those firearms and denying them the fundamental right to keep and bear arms.

92.    An outright ban on manufacturing, importing, selling, or offering for sale constitutionally protected magazines violates the Second Amendment by prohibiting retailers from engaging in commerce necessary for individuals to exercise their fundamental right to keep and bear arms. *Cf. Planned Parenthood of Central Missouri v. Danforth*, 428 U.S. 52, 62 (1976)

## VI. Prayer For Relief.

WHEREFORE, Plaintiffs respectfully pray for the following relief:

1. Declare that Washington's ban on commonly possessed semiautomatic firearms violates the right to keep and bear arms, as guaranteed under the Second and Fourteenth Amendments to the United States Constitution;

2. Preliminarily and permanently enjoin each Defendant, each Defendant's respective employees, officers, agents, and representatives, and all those acting in concert or participation with him or her, from enforcing Washington's ban on commonly possessed semiautomatic firearms;

3. Award Plaintiffs attorneys' fees and costs pursuant to 42 U.S.C. § 1988, and any other applicable law; and,

Ard Law Group PLLC

P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

4. Grant any and all other and further legal and equitable relief against Defendants as necessary to effectuate the Court's judgment, or as the Court otherwise deems just and proper.

///

///

///

Complaint - 19

*Hartford v. Ferguson*, No. 3:23-cv-5364

Ard Law Group PLLC

P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

April 25, 2023.

ARD LAW GROUP PLLC

By: _____

Joel B. Ard, WSBA # 40104
ARD LAW GROUP PLLC
P.O. Box 11633
Bainbridge Island, WA 98110
206.701.9243
Joel@Ard.law
ATTORNEYS FOR PLAINTIFFS

COMPLAINT

*HARTFORD V. FERGUSON*, NO. 3:23-cv-5364

ARD LAW GROUP PLLC

P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243