Hon. Robert J. Bryan

1

2

3

4

5
IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON

6

7   LAWRENCE HARTFORD; DOUGLAS
MITCHELL; BRETT BASS; SPORTING
8   SYSTEMS VANCOUVER, INC.; SECOND
AMENDMENT FOUNDATION; AND
9   FIREARMS POLICY COALITION, INC.,

10                     *Plaintiffs*,

11        v.

12   BOB FERGUSON, in his official capacity as
Washington State Attorney General; JOHN R.
13   BATISTE, in his official capacity as Chief of the
Washington State Patrol; JOHN GESE, in his
14   official capacity as Sheriff for Kitsap County,
Washington; CLAYTON MYERS, in his official
15   capacity as Sheriff for Kittitas County,
Washington; JOHN HORCH, in his official
16   capacity as Sheriff for Clark County,
Washington; ADAM FORTNOY, in his official
17   capacity as Sheriff for Snohomish County,
Washington; CHAD M. ENRIGHT, in his
18
official capacity as County Prosecutor for Kitsap
19   County, Washington; GREG ZEMPEL, in his
official capacity as County Prosecutor for
20   Kittitas County, Washington; TONY GOLIK,
in his official capacity as County Prosecutor for
21   Clark County, Washington; and JASON
CUMMINGS, in his official capacity as County
22
Prosecutor for Snohomish County, Washington,
23

24                     *Defendants*.

25

26

27

No. 3:23-cv-05364-RJB

MOTION FOR PRELIMINARY
INJUNCTION

NOTING DATE: MAY 26, 2023

ARD LAW GROUP PLLC
P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

TABLE OF CONTENTS

I. INTRODUCTION. ................................................................. 1

II. BACKGROUND. ................................................................. 1

III. ARGUMENT. ................................................................... 4

    A. Plaintiffs Are Likely To Succeed On The Merits Because Washington's Ban Violates the Second Amendment. ............................................... 4

        1. The Banned Firearms Are "Arms" Within the Meaning of the Second Amendment. ............................................................. 5

        2. Washington's Ban Cannot Be Historically Justified ....................... 5

    B. The Remaining Injunction Factors All Favor Plaintiffs. ...................... 14

    C. The Court Should Advance the Trial On the Merits and Consolidate It With the Preliminary Injunction, Or, In the Alternative, Grant Summary Judgment to Plaintiffs. ............................................................... 15

IV. CONCLUSION. ................................................................ 15

ARD LAW GROUP PLLC

P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

## TABLE OF AUTHORITIES

**Cases**

*Barnett v. Raoul*, No. 23-cv-141, 2023 WL 3160284 (S.D. Ill. Apr. 28, 2023) .......................... 6, 14

*Caetano v. Massachusetts*, 577 U.S. 411 (2016) ........................................................ passim

*District of Columbia v. Heller*, 554 U.S. 570 (2008) .................................................. passim

*Duncan v. Becerra*, 970 F.3d 1133 (9th Cir. 2020) ............................................................ 8

*E. Bay Sanctuary Covenant v. Trump*, 349 F. Supp. 3d 838 (N.D. Cal. 2018) ............................... 14

*Elrod v. Burns*, 427 U.S. 347 (1976) ........................................................................ 14

*Ezell v. City of Chicago*, 651 F.3d 684 (7th Cir. 2011) ............................................... 10, 15

*Friedman v. City of Highland Park*, 577 U.S. 1039, 136 S. Ct. 447 (Mem) (2015) .......................... 13

*Hanson v. District of Columbia*, No. 22-2256, 2023 WL 3019777 (D.D.C. Apr. 20, 2023) .................................................................................................... 12

*Heller v. District of Columbia*, 670 F.3d 1244 (D.C. Cir. 2011) ...................................... 9, 13

*McDonald v. City of Chicago*, 561 U.S. 742 (2010) .......................................................... 14

*Melendres v. Arpaio*, 695 F.3d 990 (9th Cir. 2012) ......................................................... 14

*Moore v. Madigan*, 702 F.3d 933 (7th Cir. 2012) ............................................................ 15

*Muscarello v. United States*, 524 U.S. 125 (1998) .......................................................... 12

*New York State Rifle & Pistol Ass'n, Inc. v. Cuomo*, 804 F.3d 242 (2d Cir. 2015) ........................... 9

*New York State Rifle & Pistol Association, Inc. v. Bruen*, 142 S. Ct. 2111 (2022) .................... passim

*People v. Webb*, 131 N.E. 3d 93 (Ill. 2019) ................................................................ 12

*Ramirez v. Commonwealth*, 94 N.E.3d 809 (Mass. 2018) ....................................................... 11

MOTION FOR PRELIMINARY INJUNCTION - iii

*HARTFORD V. FERGUSON*, No. 3:23-cv-05364-RJB

ARD LAW GROUP PLLC

P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

*Rocky Mountain Gun Owners v. Town of Superior, Colo.*, No. 1:22-cv-01685, Doc. 18
    (D. Col. July 22, 2022) ................................................................. 6

*Sammartano v. First Jud. Dist. Ct.*, 303 F.3d 959 (9th Cir. 2002) ................................. 14

*Socialist Workers Party v. Ill. State Bd. of Elections*, 566 F.2d 586 (7th Cir. 1977) ......................... 15

*Staples v. United States*, 511 U.S. 600 (1994) ........................................................8, 13

*Stenberg v. Carhart*, 530 U.S. 914 (2000) ........................................................ 8

*Worman v. Healey*, 293 F. Supp. 3d 251 (D. Mass. 2018) ................................. 13

**Constitutional Provisions**

U.S. CONST. amend. II. ..............................................................5, 12

**Statutes**

S.H.B. 1240, 68th Leg., Reg. Sess. (Wash. 2023) .......................................... 1

**Other Authorities**

2021 Firearms Retailer Survey Report at 9, NAT'L SHOOTING SPORTS FOUND.,
    INC. (2021) .................................................................. 9

Christopher S. Koper, *Assessing the Potential to Reduce Deaths and Injuries from*
    *Mass Shootings Through Restrictions on Assault Weapons and Other High-*
    *Capacity Semiautomatic Firearms*, 19 CRIM'Y & PUB. POL'Y 147 (2020)................................ 13

*Commonly Owned: NSSF Announces Over 24 Million MSRS in Circulation*, NSSF
    (July 20, 2022) ................................................................. 9

*Crime Data Explorer*, FBI, U.S. DEP'T OF JUST. (2020)................................ 10

David B. Kopel, *Rational Basis Analysis of "Assault Weapon" Prohibition*, 20 J.
    CONTEMP. L. 381, 413 (1994)................................ 14

MOTION FOR PRELIMINARY INJUNCTION - iv

*HARTFORD V. FERGUSON*, No. 3:23-cv-05364-RJB

ARD LAW GROUP PLLC

P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

English, *2021 Survey*...................................................................................................... 9

*Expanded Homicide Data Table 8: Murder Victims by Weapon, 2015–2019*, *Crime in the United States*, FBI, U.S. DEP'T OF JUST. (2019) ............................................... 10

FRANK MINITER, THE FUTURE OF THE GUN 35 (2014)...........................................10, 13

GARY KLECK, TARGETING GUNS: FIREARMS AND THEIR CONTROL 112 (1997) ........................... 10

Mariel Alper & Lauren Glaze, *Source and Uses of Firearms Involved in Crimes: Survey of Prison Inmates, 2016*, U.S. DEP'T OF JUST., OFF. OF JUST. PROGS., BUREAU OF JUST. STATS. (Jan. 2019) ...............................................................................11

Modern Sporting Rifle: Comprehensive Consumer Report at 5, NAT'L SHOOTING SPORTS FOUND., INC. (July 14, 2022)........................................................................... 10

Nicholas J. Johnson, *Supply Restrictions at the Margins of Heller and the Abortion Analogue*, 60 HASTINGS L.J. 1285 (2009).......................................................................... 9

*Poll of current gun owners* at 1, WASH. POST-IPSOS (Mar. 27, 2023) ............................. 10

*Rifle Marksmanship: M16-/M4-Series* Weapons, DEP'T OF THE ARMY (Aug. 12, 2008)............................................................................................................................ 13

Shauna Sowersby, *WA becomes 10th state in the U.S. to ban assault weapons after Inslee signs bill into law*, THE OLYMPIAN (Apr. 25, 2023)......................................... 14

Sport Shooting Participation in the U.S. in 2020 at *iii*, NAT'L SHOOTING SPORTS FOUND., INC. (2021) .......................................................................................................... 10

William English, *2021 National Firearms Survey: Updated Analysis Including Types of Firearms Owned* ( ..................................................................................................... 9

MOTION FOR PRELIMINARY INJUNCTION - v

*HARTFORD V. FERGUSON*, No. 3:23-cv-05364-RJB

ARD LAW GROUP PLLC

P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

## I. Introduction.

In *New York State Rifle & Pistol Association, Inc. v. Bruen*, 142 S. Ct. 2111 (2022), the Supreme Court explained that the Second Amendment "elevates above all other interests the right of law-abiding, responsible citizens to use arms for self-defense" and that it is not legislation, but "the traditions of the American people—that demands our unqualified deference." *Id.* at 2131 (quotation marks omitted). In this case, Washington has passed a law that is irreconcilable with the traditions of the American people. Substitute House Bill 1240, which makes it unlawful for law-abiding citizens to "manufacture, import, distribute, sell, or offer for sale" so-called "assault weapons," is unconstitutional under the Second Amendment. S.H.B. 1240, 68th Leg., Reg. Sess. (Wash. 2023) (hereinafter cited as "Act").

The Supreme Court has repeatedly held that the Second Amendment "protects the possession and use of weapons that are in common use at the time." *Bruen*, 142 S. Ct. at 2128 (quotation marks omitted). The banned firearms certainly qualify for protection under this standard. They include the most popular rifles in the country and estimates suggest there are *tens of millions* in the United States today. As such, there is no possible justification for Washington's unconstitutional ban. And because the law Plaintiffs challenge is unconstitutional, they are entitled to a preliminary injunction to stop it from going into effect. Not only are they likely to succeed on the merits, but the threatened constitutional violation of Plaintiffs' right to acquire firearms and to supply their customers with the same, would be irreparable if it were to occur, and public interest always favors the injunction of unconstitutional laws. Because this case involves purely legal issues and no fact development is necessary, Plaintiffs furthermore request that the Court advance the trial on the merits and consolidate it with the preliminary injunction hearing, or alternatively, construe their motion as one for summary judgment. *See* Fed. R. Civ. P. 65(a)(2).

## II. Background.

On April 25, 2023, Washington passed Substitute House Bill 1240 (the "Washington Ban," hereinafter cited as "Act"), which makes it illegal for any person in Washington to "manufacture, import, distribute, sell, or offer for sale any assault weapon," Act § 3(1). The

Motion for Preliminary Injunction - 1
*Hartford v. Ferguson*, No. 3:23-cv-05364-RJB

Ard Law Group PLLC

P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

"limited exemptions applicable to licensed firearm manufacturers and dealers for purposes of sale to armed forces branches and law enforcement agencies and for purposes of sale or transfer outside the state, and to inheritors," do not provide any method for typical civilians in Washington to legally acquire the banned firearms. Act at Preamble. The Act defines assault weapons both by listing more than 50 models of firearm (including the AR-15 and AK-47 models), *see* R.C.W. § 9.41.010(a)(ii), and by listing features (which overlap in many cases with features of the firearms included on the list), *see id.* § 9.41.010(2)(a)(iii).

Plaintiffs in this case are three individuals, one licensed dealer, and two organizations who bring this action to vindicate their Second Amendment rights (and the rights of their customers and members) to keep and bear arms in common use today. Plaintiff Lawrence Hartford is a law-abiding Washington citizen and member of Plaintiffs Second Amendment Foundation ("SAF") and Firearms Policy Coalition, Inc. ("FPC"). Declaration of Lawrence Hartford in Support of Motion for Preliminary Injunction, ¶ 3. If it were not for the Washington Ban, he would acquire a BCM M4 Mod 2, an AR-type firearm. *Id.* ¶4. However, because he fears prosecution by Defendants under the Washington Ban, and because it has destroyed the legal market for that firearm in Washington, he cannot exercise his Second Amendment right to purchase this firearm, which is in common use. *Id.* ¶¶ 5-7 Plaintiff Douglas Mitchell is a law-abiding Washington citizen and member of Plaintiffs SAF and FPC. Declaration of Douglas Mitchell in Support of Motion for Preliminary Injunction, ¶ 3. If it were not for the Washington Ban, he would acquire a Bravo Company EAG Tactical Carbine, an AR-type firearm. *Id.* ¶ 4. However, because he fears prosecution by Defendants under the Washington Ban, and because it has destroyed the legal market for that firearm in Washington, he cannot exercise his Second Amendment right to purchase this firearm, which is in common use. *Id.* ¶¶ 5-7. Plaintiff Brett Bass is a law-abiding Washington citizen and member of Plaintiffs SAF and FPC. Declaration of Brett Bass in Support of Motion for Preliminary Injunction, ¶ 3. If it were not for the Washington Ban, he would acquire a Palmetto State Armory AK-103. *Id.* ¶ 4. However, because he fears prosecution by Defendants under the Washington Ban, and because it has destroyed the legal market for that firearm in

Motion for Preliminary Injunction - 2
*Hartford v. Ferguson*, No. 3:23-cv-05364-RJB

Ard Law Group PLLC
P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

Washington, he cannot exercise his Second Amendment right to purchase this firearm, which is in common use. Id. ¶¶ 5-7.

Plaintiff Sporting Systems Vancouver, Inc. is a federally licensed firearm dealer, and its principal is a member of Plaintiffs SAF and FPC. Declaration of Daniel Mitchell in Support of Motion for Preliminary Injunction, ¶¶ 2-3. Sporting Systems sold banned semiautomatic rifles— now tendentiously labeled "assault weapons" by Washington—and did substantial business in those firearms until the Washington Ban was enacted. Id. ¶¶ 4-5. Because of the Washington Ban, Sporting Systems can no longer sell those firearms. Id. ¶ 6. The only reason it has ceased this activity is because of fear of prosecution by Defendants. Id. ¶ 7.

Plaintiff SAF is a nonprofit educational foundation that seeks to preserve the effectiveness of the Second Amendment through education, research, publishing, and legal action programs focused on the constitutionally protected right to possess firearms and firearm ammunition, and the consequences of gun control. Declaration of Alan Gottlieb in Support of Motion for Preliminary Injunction, ¶ 3. SAF has thousands of members in Washington, including the named Plaintiffs, and brings this action to vindicate the rights of its members. Id. ¶ 4.

Plaintiff FPC is a nonprofit organization that seeks to defend and promote the People's rights—especially the fundamental, individual Second Amendment right to keep and bear arms— advance individual liberty, and restore freedom. Declaration of Brandon Combs in Support of Motion for Preliminary Injunction, ¶ 3. It has members in Washington, including the named Plaintiffs, and brings this action to vindicate the rights of its members. Id. ¶ 4.

The Defendants are Washington officials with authority to enforce the Washington Ban against Plaintiffs. Defendant Bob Ferguson, as Washington Attorney General, has the authority to assist in the prosecution of crimes, including violations of the Ban, and to institute and prosecute actions on behalf of the state which are "necessary in the execution of the duties of any state officer." RCW § 43.10.030(2). Defendant John R. Batiste, as Chief of the Washington State Patrol, has the power and the duty to enforce state law, including the Ban, throughout the state. RCW § 43.10.030. Defendants John Gese, Clayton Myers, John Horch, and Adam Fortnoy are sheriffs in

Motion for Preliminary Injunction - 3
*Hartford v. Ferguson*, No. 3:23-cv-05364-RJB

Ard Law Group PLLC

P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

the counties where the Plaintiffs (other than SAF and FPC) reside, and as such are charged with arresting and imprisoning "all persons guilty of public offenses" within their counties, including individuals who violate the Ban. RCW § 36.28.010(1). Defendants Chad M. Enright, Greg Zempel, Tony Golik, and Jason Cummings are county prosecutors in the counties where the Plaintiffs (other than SAF and FPC) reside, and as such are responsible for "prosecut[ing] all criminal and civil actions" including for violations of the Ban, "in which the state or the county may be a party." RCW § 36.27.020(4).

Just minutes after the Ban was passed, Plaintiffs filed the instant action seeking declaratory and injunctive relief. *See* Compl., Doc. 1 (Apr. 25, 2023). Pursuant to Federal Rule of Civil Procedure 65 and Local Civil Rule 7, Plaintiffs now hereby move for a preliminary injunction to restrain the Defendants from enforcing this unconstitutional law. In the alternative, Plaintiffs seek to advance the trial on the merits or move for summary judgment, which is appropriate given that the issues in this case are purely legal, and none of the relevant facts can reasonably be disputed.

### III. Argument.

"The basic function of a preliminary injunction is to preserve the *status quo* pending a determination of the action on the merits." *Chalk v. U.S. Dist. Ct. C.D. Cal.*, 840 F.2d 701, 704 (9th Cir. 1998). To obtain a preliminary injunction, plaintiffs must establish: (1) likelihood of success on the merits; (2) likelihood of irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in their favor, and (4) that an injunction is in the public interest. *Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). When the government is a party to an action, these last two factors merge. *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014).

### A.   Plaintiffs Are Likely To Succeed On The Merits Because Washington's Ban Violates the Second Amendment.

In *Bruen*, and "[i]n keeping with *Heller*," the Supreme Court held that "when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. To justify its regulation, the government . . . must demonstrate that the regulation is

Motion for Preliminary Injunction - 4
*Hartford v. Ferguson*, No. 3:23-cv-05364-RJB

Ard Law Group PLLC
P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

consistent with this Nation's historical tradition of firearm regulation." *Bruen*, 142 S. Ct. at 2126. Here, the Second Amendment's plain text covers the firearms Washington bans, so it falls to the State to justify the ban as consistent with historical tradition rooted in the Founding. It cannot possibly do so, because *Bruen* has already established that there is no tradition of banning commonly possessed arms.

1.       **The Banned Firearms Are "Arms" Within the Meaning of the Second Amendment.**

The Second Amendment states: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. CONST. amend. II. The challenged law bans semiautomatic rifles based on their possessing specific features—for example, a rifle is banned if it can accept a detachable magazine and has a muzzle brake or muzzle compensator—or based on its inclusion in a list of specific models of banned arms.

These are "Arms" within the meaning of the Second Amendment's plain text. The Supreme Court has explained that "[t]he 18th-century meaning is no different from the meaning today. . . . '[A]rms' [means] 'any thing that a man wears for his defence, or takes into his hands, or useth in wrath to cast at or strike another.' " *District of Columbia v. Heller*, 554 U.S. 570, 581 (2008). As a result, the Amendment presumptively protects Americans' rights to possess "all instruments that constitute bearable arms, even those that were not in existence at the time of the founding." *Id.* at 582; *accord Caetano v. Massachusetts*, 577 U.S. 411, 411 (2016); *see also Bruen*, 142 S. Ct. at 2132. Therefore, under *Bruen*, Washington has the burden to show that its Ban is consistent with this Nation's tradition of firearm regulation.

2.       **Washington's Ban Cannot Be Historically Justified**

(a)       **Only "Dangerous and Unusual" Arms Can Be Banned Consistent With Our History and Tradition.**

If the Ban is to survive, the State must prove that it is "consistent with this Nation's historical tradition of firearm regulation." *Bruen*, 142 S. Ct. at 2126. Both *Bruen* and *Heller* have already established the relevant contours of the tradition at issue in this case: bearable arms cannot

MOTION FOR PRELIMINARY INJUNCTION - 5
*HARTFORD V. FERGUSON*, No. 3:23-cv-05364-RJB

ARD LAW GROUP PLLC

P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

be banned unless doing so would fit into the "historical tradition" of restricting " 'dangerous and unusual weapons.' " *Id.* at 2128 (quoting *Heller*, 554 U.S. at 627). And a law by definition *will not* fit into that tradition if it bans "possession and use of weapons that are 'in common use at the time.' " *Id.*; *see also Heller*, 554 U.S. at 625.

This test is based on historical practice and "the historical understanding of the scope of the right." *Heller*, 554 U.S. at 625; *see also Bruen*, 142 S. Ct. at 2131 ("The test that we set forth in *Heller* and apply today requires courts to assess whether modern firearms regulations are consistent with the Second Amendment's text and historical understanding."); TRO at 10, *Rocky Mountain Gun Owners v. Town of Superior, Colo.*, No. 1:22-cv-01685, Doc. 18 (D. Col. July 22, 2022) (granting, post-*Bruen*, a temporary restraining order against enforcement of similar ban on certain semiautomatic rifles and noting "the Court is unaware of historical precedent that would permit a governmental entity to entirely ban a type of weapon that is commonly used by law-abiding citizens for lawful purposes"). In the context of bans on bearable arms, in other words, the Supreme Court has already done the historical spadework—and the only restrictions of this kind that it has deemed consistent with the historical understanding of the right to keep and bear arms are restrictions limited to *dangerous and unusual* arms that *are not in common use*.

This Court's task is therefore a simple one: it must merely determine whether the banned firearms are "dangerous and unusual." "[T]his is a conjunctive test: A weapon may not be banned unless it is *both* dangerous *and* unusual." *Caetano*, 577 U.S. at 417 (Alito, J., concurring). And a firearm that is in common use for lawful purposes, by definition, *does not* fall within this category and *cannot be banned*. *Bruen*, 142 S. Ct. at 2143. "[T]he commonality of 'arms' banned under [the challenged law] is dispositive." *See Barnett v. Raoul*, No. 23-cv-141, 2023 WL 3160284, at *11 (S.D. Ill. Apr. 28, 2023). *Heller* explained that the historical reason for this understanding of the right is that "[t]he traditional militia was formed from a pool of men bringing arms 'in common use at the time' for lawful purposes like self-defense," and so the focus of this Court must be on the lawful use of firearms by law-abiding citizens, not on a criminal misuse by a small minority. *See Heller*, 554 U.S. at 624.

Motion for Preliminary Injunction - 6
*Hartford v. Ferguson*, No. 3:23-cv-05364-RJB

Ard Law Group PLLC

P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

To determine whether a firearm is "unusual" the Supreme Court has likewise made clear that the Second Amendment focuses on the practices of the American people *nationwide*, not just in Washington. *See Bruen*, 142 S. Ct. at 2131 ("It is this balance—struck by the traditions *of the American people*—that demands our unqualified deference." (emphasis added)); *Heller*, 554 U.S. at 628 (handguns are "overwhelmingly chosen by *American society*" for self-defense (emphasis added)); *Caetano*, 577 U.S. at 420 (Alito, J., concurring) ("[S]tun guns are widely owned and accepted as a legitimate means of self-defense *across the country*." (emphasis added)). Therefore, the Amendment protects those who live in states or localities with a less robust practice of protecting the right to keep and bear firearms from outlier legislation (like Washington's ban here) just as much as it protects those who live in jurisdictions that have hewed more closely to America's traditions.

Furthermore, courts and legislatures do not have the authority to second-guess the choices made by law-abiding citizens by questioning whether they really "need" the arms that ordinary citizens have chosen to possess. While *Heller* noted several "reasons that a citizen may prefer a handgun for home defense," the Court held that "[*w*]*hatever the reason*, handguns are the most popular weapon chosen by Americans for self-defense in the home, and a complete prohibition of their use is invalid." 554 U.S. at 629 (emphasis added). And in *Bruen* the Court reaffirmed that "the traditions of the American people"—which includes their choice of preferred firearms— "demand[ ] [the courts'] unqualified deference." 142 S. Ct. at 2131. Thus, unless the State can show that a certain type of firearm is "not typically possessed by law-abiding citizens for lawful purposes," *Heller*, 554 U.S. at 625, that is the end of the matter. Firearms owned by law-abiding citizens for lawful purposes cannot be banned.

Finally, the Second Amendment inquiry focuses on the choices commonly made by *contemporary* law-abiding citizens. *Heller* as "the argument [as] bordering on the frivolous, that only those arms in existence in the 18th century are protected." *Id*. at 582. And in *Caetano*, the Supreme Court reiterated this point, holding that "Arms" protected by the Second Amendment need not have been "in existence at the time of the founding." 577 U.S. at 411–12 (quoting *Heller*, 554 U.S.

MOTION FOR PRELIMINARY INJUNCTION - 7
*HARTFORD V. FERGUSON*, No. 3:23-cv-05364-RJB

ARD LAW GROUP PLLC
P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

at 582). The *Caetano* Court flatly denied that a particular type of firearm's being "a thoroughly modern invention" is relevant to determining whether the Second Amendment protects it. *Id.* at 412 (quotation omitted). And *Bruen* cements the point. Responding to laws that allegedly restricted the carrying of handguns during the colonial period, the Court reasoned that "even if these colonial laws prohibited the carrying of handguns because they were considered 'dangerous and unusual weapons' in the 1690s, they provide no justification for laws restricting the public carry of weapons that are unquestionably in common use today." *Bruen*, 142 S. Ct. at 2143.

### (b)     The Banned Firearms Are In Common Use.

This case thus reduces to the following, straightforward inquiry: are the arms banned by Washington in "common use," according to the lawful choices by contemporary Americans? They unquestionably are.

The term "assault weapons" is a misnomer. "Prior to 1989, the term 'assault weapon' did not exist in the lexicon of firearms. It is a political term, developed by anti-gun publicists." *Stenberg v. Carhart*, 530 U.S. 914, 1001 n.16 (2000) (Thomas, J., dissenting) (citation and quotation marks omitted). But while "assault weapons" are not a recognized category of firearms, "semiautomatic" is. And it is semiautomatic rifles that Washington labels as "assault weapons" and which Plaintiffs wish to acquire. The "automatic" part of "semiautomatic" refers to the fact that the user need not manually load another round in the chamber after each round is fired. But unlike an automatic rifle, a semiautomatic rifle will not fire continuously on one pull of its trigger; rather, a semiautomatic rifle requires the user to pull the trigger each time he or she wants to discharge a round. *See Staples v. United States*, 511 U.S. 600, 602 n.1 (1994).

Even accepting the State's framing, if the banned firearms *are* considered as a separate category of arms rather than simply examples of semiautomatic firearms, they still easily satisfy the common use test. The dispositive point under *Heller* and *Bruen* is that millions of law-abiding citizens choose to possess firearms in that category. Commonality in this case "is determined largely by statistics." *Duncan v. Becerra*, 970 F.3d 1133, 1147 (9th Cir. 2020), *rev'd sub nom. Duncan v. Bonta*, 19 F.4th 1087 (9th Cir. 2021) (en banc), *granted, vacated, and remanded in light of Bruen*,

Motion for Preliminary Injunction - 8
*Hartford v. Ferguson*, No. 3:23-cv-05364-RJB

Ard Law Group PLLC

P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

142 S. Ct. 2895 (2022); *see also Ass'n of N.J. Rifle & Pistol Clubs, Inc.* ("*ANJRPC*") *v. Att'y Gen.of N.J.*, 910 F.3d 106, 116 (3d Cir. 2018), *abrogated by Bruen* (finding an "arm" is commonly owned because "[t]he record shows that millions . . . are owned"); *New York State Rifle & Pistol Ass'n, Inc. v. Cuomo*, 804 F.3d 242, 255 (2d Cir. 2015), *abrogated by Bruen* ("Even accepting the most conservative estimates cited by the parties and by amici, the assault weapons . . . at issue are 'in common use' as that term was used in *Heller.*"); *Heller v. District of Columbia*, 670 F.3d 1244, 1261 (D.C. Cir. 2011) ("*Heller II*")("We think it clear enough in the record that semi-automatic rifles . . . are indeed in 'common use.' "). This is demonstrated by the AR-15 and other modern semiautomatic rifles, which epitomize the firearms that the State bans.

The AR-15 is America's "most popular semi-automatic rifle," *id.* at 1287 (Kavanaugh, J., dissenting), and in recent years it has been "the best-selling rifle type in the United States," Nicholas J. Johnson, *Supply Restrictions at the Margins of Heller and the Abortion Analogue*, 60 HASTINGS L.J. 1285, 1296 (2009). Today, the number of AR-type rifles and other similar rifles in circulation in the United States exceeds **twenty-four million**. *Commonly Owned: NSSF Announces Over 24 Million MSRS in Circulation*, NSSF (July 20, 2022), https://bit.ly/3QBXiyv. *See also* William English, *2021 National Firearms Survey: Updated Analysis Including Types of Firearms Owned* ("*2021 Survey*"), at 1 (May 13, 2022), https://bit.ly/3yPfoHw (finding that an estimated 24.6 million American gun owners have owned AR-15s or similar rifles). In recent years they have been the second-most common type of firearm sold, at approximately 20% of all firearm sales, behind only semiautomatic handguns. *See* 2021 Firearms Retailer Survey Report at 9, NAT'L SHOOTING SPORTS FOUND., INC. (2021), https://bit.ly/3gWhI8E.

AR-style rifles are commonly and overwhelmingly possessed by law-abiding citizens for lawful purposes. In a 2021 survey of 16,708 gun owners, recreational target shooting was the most common reason (cited by 66% of owners) for possessing an AR-style firearm, followed closely by home defense (61.9% of owners) and hunting (50.5% of owners). English, *2021 Survey* at 33–34. This is consistent with the findings of another recent survey of over 2,000 owners of such firearms, in which home-defense again followed (closely) only recreational target shooting as the most

MOTION FOR PRELIMINARY INJUNCTION - 9
*HARTFORD V. FERGUSON*, No. 3:23-cv-05364-RJB

ARD LAW GROUP PLLC
P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

important reason for owning these firearms. *See* Modern Sporting Rifle: Comprehensive Consumer Report at 5, Nat'l Shooting Sports Found., Inc. (July 14, 2022), https://bit.ly/3SSrVjM. Even more recently the Washington Post separately reached essentially identical results, finding that 20% of current firearm owners own an AR-15 or similar style rifle, with 60% of AR owners reporting target shooting was a "major reason" for their owning the firearm and 30% citing it as a "minor reason." *Poll of current gun owners* at 1, Wash. Post-Ipsos (Mar. 27, 2023), https://bit.ly/42jBqOn. Protection of self, family, and property was even *more* important in this survey, with 65% of owners citing it as a major reason and 26% noting it as a minor reason. *Id.* Yet another survey found that more than 20 million adults participated in target or sport shooting with firearms like those Washington has banned. Sport Shooting Participation in the U.S. in 2020 at *iii*, Nat'l Shooting Sports Found., Inc. (2021), https://bit.ly/3sPuEQl. These purposes are plainly lawful (and related), as "maintain[ing] proficiency in firearm use [is] an important corollary to . . . self-defense," *Ezell v. City of Chicago*, 651 F.3d 684, 708 (7th Cir. 2011). Overall, "AR-style rifles are popular with civilians and law enforcement around the world because they're accurate, light, portable, and modular. . . . [The AR-style rifle is] also easy to shoot and has little recoil, making it popular with women." Frank Miniter, The Future of the Gun 35 (2014). Indeed, "the AR-15 is so user-friendly that a group called 'Disabled Americans for Firearms Rights' . . . says the AR-15 makes it possible for people who can't handle a bolt-action or other rifle type to shoot and protect themselves." *Id.*

       The fact that "assault" rifles are used extremely rarely in crime underscores that AR-15s and other banned rifles are commonly possessed by law-abiding citizens for lawful purposes. Evidence indicates that "well under 1% [of crime guns] are 'assault rifles.' " Gary Kleck, Targeting Guns: Firearms and their Control 112 (1997). From 2015 through 2020, only 2.4% of murders were committed with *any* type of rifle. *See Crime Data Explorer*, FBI, U.S. Dep't of Just. (2020), https://bit.ly/3AA8Qwj; *Expanded Homicide Data Table 8: Murder Victims by Weapon, 2015–2019*, *Crime in the United States*, FBI, U.S. Dep't of Just. (2019), https://bit.ly/31WmQ1V (72,781 total murders; 1,573 with rifles). Murder by "hands, fists, feet,

Motion for Preliminary Injunction - 10

*Hartford v. Ferguson*, No. 3:23-cv-05364-RJB

Ard Law Group PLLC

P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

etc." was almost twice as common, at 3,346, over the same time period—and murder by handgun, at over 30,000, was over *20 times* as common. *Id.* Even in the counterfactual event that a different modern semiautomatic rifle had been involved in each rifle-related murder from 2015 to 2020, an infinitesimal percentage of the approximately 20 million modern sporting rifles in circulation in the United States during that time period—around .01 percent—would have been used for that unlawful purpose. More broadly, as of 2016, only .8 percent of state and federal prisoners reported using *any* kind of rifle during the offense for which they were serving time. Mariel Alper & Lauren Glaze, *Source and Uses of Firearms Involved in Crimes: Survey of Prison Inmates, 2016* at 5 tbl. 3, U.S. Dep't of Just., Off. of Just. Progs., Bureau of Just. Stats. (Jan. 2019), https://bit.ly/31VjRa9.

The Supreme Court's decision in *Caetano* further confirms that the arms banned by Washington are in common use for lawful purposes. That case concerned Massachusetts's ban on the possession of stun guns, which the Commonwealth's highest court had upheld on the basis that such weapons are not protected by the Second Amendment. *Caetano*, 577 U.S. at 411. With a brief *per curiam* opinion, the Supreme Court vacated that decision. *Id.* at 411–12. Though the Court remanded the case back to the state court without deciding whether stun guns are constitutionally protected, *see id.*, Justice Alito filed a concurring opinion concluding that those arms "are widely owned and accepted as a legitimate means of self-defense across the country," based on evidence that "hundreds of thousands of Tasers and stun guns have been sold to private citizens." *Id.* at 420 (Alito, J., concurring) (cleaned up) (citation omitted). Of course, that is far fewer than the millions of semiautomatic rifles sold to private citizens nationwide that Washington bans.

The Massachusetts Supreme Judicial Court got the message. In a subsequent case, that Court, relying on *Caetano*, held that because "stun guns are 'arms' within the protection of the Second Amendment," the state's law barring "civilians from possessing or carrying stun guns, even in their home, is inconsistent with the Second Amendment and is therefore unconstitutional." *Ramirez v. Commonwealth*, 94 N.E.3d 809, 815 (Mass. 2018). The Illinois Supreme Court followed suit with a similar ruling in 2019, relying on *Caetano* and *Ramirez* to

Motion for Preliminary Injunction - 11
*Hartford v. Ferguson*, No. 3:23-cv-05364-RJB

Ard Law Group PLLC

P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

conclude that "[a]ny attempt by the State to rebut the *prima facie* presumption of [S]econd [A]mendment protection afforded stun guns and tasers on the grounds that the weapons are uncommon or not typically possessed by law-abiding citizens for lawful purposes would be futile." *People v. Webb*, 131 N.E. 3d 93, 96 (Ill. 2019) (citations omitted). This reasoning is sound, and it necessarily entails the invalidity of Washington's Ban, which restricts arms that are many times more common than stun guns.

Finally, in the wake of *Bruen* some district courts have attempted to draw a line between firearms that are commonly *owned* and those that are commonly *used*, seeking to restrict the right to keep arms to only the latter. *See, e.g.*, *Hanson v. District of Columbia*, No. 22-2256, 2023 WL 3019777, at *10 (D.D.C. Apr. 20, 2023) (finding magazines holding more than ten rounds were not in common use in part because few self-defense encounters involve firing more than ten shots). But such a narrow view of "common use" is incompatible with the Second Amendment and with binding precedent. The Second Amendment protects the rights of Americans to "keep and bear Arms." U.S. CONST. amend. II. By its plain terms then, it contemplates ways of "using" firearms other than just shooting them. In construing the word "bear," *Heller* explained the term meant "being *armed and ready* for offensive or defensive action in a case of conflict with another person." 554 U.S. at 584 (quoting *Muscarello v. United States*, 524 U.S. 125, 143 (1998) (Ginsburg, J., dissenting)) (emphasis added). Similarly, in *Bruen* the Court explained that "[a]lthough individuals often 'keep' firearms in their home, *at the ready for self-defense*, most do not 'bear' (*i.e.*, carry) them in the home beyond moments of actual confrontation. To confine the right to 'bear' arms to the home would nullify half of the Second Amendment's operative protections." 142 S. Ct. at 2134–35 (emphasis added). Permitting Washington to ban a type of arm that is commonly *owned* but not commonly *fired* in self-defense would go further and nullify *both* of the Amendment's operative protections. It would also conflict with the way that Supreme Court justices have considered the phrase. In *Caetano*, Justice Alito concluded stun guns were "in common use" because "hundreds of thousands . . . [had] been sold to private citizens," 577 U.S. at 420 (Alito, J., concurring) (citation omitted). In *Friedman v. City of Highland Park*, Justice Thomas explained

MOTION FOR PRELIMINARY INJUNCTION - 12
*HARTFORD V. FERGUSON*, No. 3:23-cv-05364-RJB

ARD LAW GROUP PLLC
P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

that a similar ban on so-called "assault weapons" was "highly suspect because . . . [r]oughly five million Americans own AR-style semiautomatic rifles." 577 U.S. 1039, 136 S. Ct. 447, 449 (Mem) (2015) (Thomas, J., dissenting from the denial of certiorari). And in his dissent in *Heller II*, then-Judge Kavanaugh also relied on sales figures to demonstrate that semiautomatic rifles are in common use. *See* 670 F.3d at 1287 (Kavanaugh, J., dissenting).

That the banned firearms, as a subset of semiautomatic firearms, are in common use ends the inquiry. Even so, the Court should not credit any argument that attempts to paint the banned firearms as different from other semiautomatic rifles. There are significant practical differences between automatic "machine guns" and semiautomatic rifles. According to the United States Army, for example, the maximum effective rates of fire for various M4- and M16-series firearms is between forty-five and sixty-five rounds per minute in semiautomatic mode, versus 150–200 rounds per minute in automatic mode. *Rifle Marksmanship: M16-/M4-Series* Weapons at 2-1, tbl. 2-1, DEP'T OF THE ARMY (Aug. 12, 2008), https://bit.ly/3pvS3SW. But "AW-type firearms do not operate differently than other comparable semiautomatics, nor do they fire more lethal ammunition." Christopher S. Koper, *Assessing the Potential to Reduce Deaths and Injuries from Mass Shootings Through Restrictions on Assault Weapons and Other High-Capacity Semiautomatic Firearms*, 19 CRIM'Y & PUB. POL'Y 147, 149 (2020). Indeed, the AR-15—the paradigmatic semiautomatic rifle targeted by "assault weapons" laws—is typically chambered for .223 Remington/5.56 NATO ammunition, *see, e.g.*, *Worman v. Healey*, 293 F. Supp. 3d 251, 258 (D. Mass. 2018), *aff'd*, 922 F.3d 26 (1st Cir. 2019), which "makes it safer to use as a home-defense gun because this lighter caliber is less likely to travel through walls," MINITER, *supra* at 35. The rifles Washington bans also fire at the same rate as all other semiautomatics—one round for each pull of the trigger.

There is a long tradition in this country of lawful private ownership of semiautomatic firearms. The Supreme Court has held as much, concluding in *Staples* that semiautomatic rifles "traditionally have been widely accepted as lawful possessions." *Staples*, 511 U.S. at 612. Semiautomatic rifles have been commercially available for over a century. *See Heller II*, 670 F.3d at 1287 (Kavanaugh, J., dissenting); *see also* David B. Kopel, *Rational Basis Analysis of "Assault*

MOTION FOR PRELIMINARY INJUNCTION - 13
*HARTFORD V. FERGUSON*, No. 3:23-cv-05364-RJB

ARD LAW GROUP PLLC

P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

1   *Weapon" Prohibition*, 20 J. CONTEMP. L. 381, 413 (1994). Apart from the now-expired ten-year

2   federal "assault weapons" ban, the federal government has not banned them. And currently the

3   vast majority of States do not ban semiautomatic rifles deemed "assault weapons." *See* Shauna

4   Sowersby, *WA becomes 10th state in the U.S. to ban assault weapons after Inslee signs bill into law*, THE

5   OLYMPIAN (Apr. 25, 2023), https://bit.ly/40H6vdl. They are in common use and the Washington

6   Ban must be enjoined.

7   **B.**     **The Remaining Injunction Factors All Favor Plaintiffs.**

8       "It is well established that the deprivation of constitutional rights 'unquestionably

9   constitutes irreparable injury.' " *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting

10   *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). This is no less true in the context of a Second Amendment

11   challenge. "The constitutional right to bear arms in public for self-defense is not 'a second-class

12   right, subject to an entirely different body of rules than other Bill of Rights guarantees.' " *Bruen*,

13   142 S. Ct. at 2156 (quoting *McDonald v. City of Chicago*, 561 U.S. 742, 780 (2010) (plurality op.)).

14   As such, for the same reasons that Plaintiffs have demonstrated the Washington Ban infringes their

15   Second Amendment rights, they have established irreparable harm.

16       The existence of an ongoing constitutional violation also disposes of the "balance of the

17   equities" and "public interest" factors this Court considers in granting a preliminary injunction.

18   "[I]t is always in the public interest to prevent the violation of a party's constitutional rights."

19   *Melendres*, 695 F.3d at 1002 (quoting *Sammartano v. First Jud. Dist. Ct.*, 303 F.3d 959, 974 (9th Cir.

20   2002)). And Washington will not be harmed in any way by an injunction that merely keeps in place

21   the status quo which has *always* prevailed in Washington until now—that citizens may purchase

22   common semiautomatic firearms and use them for lawful purposes. Additionally, this Court should

23   waive the bond under Rule 65(c), because the balance of equities strongly favors Plaintiffs and

24   "there is a significant public interest underlying this action." *E. Bay Sanctuary Covenant v. Trump*,

25   349 F. Supp. 3d 838, 868 (N.D. Cal. 2018). For these reasons, a district court recently preliminarily

26   enjoined an essentially identical new law banning the possession of common firearms in Illinois.

27   *See Barnett*, 2023 WL 3160284, at *11–12.

**C.   The Court Should Advance the Trial On the Merits and Consolidate It With the Preliminary Injunction, Or, In the Alternative, Grant Summary Judgment to Plaintiffs.**

In this case none of the material facts can be reasonably disputed. The firearms at issue are in common use and so the Washington Ban is unconstitutional, full stop. *See Ezell*, 651 F.3d at 697 ("Once standing is established, the plaintiff's personal situation becomes irrelevant. It is enough that we have only the statute itself and the statement of basis and purpose that accompanied its promulgation." (cleaned up)); *see also Moore v. Madigan*, 702 F.3d 933, 942 (7th Cir. 2012) ("The constitutionality of the challenged statutory provisions does not present factual questions for determination in a trial."). Because the issues in this case are purely legal, there is no reason to delay and final judgment should be entered in Plaintiffs' favor. *See Socialist Workers Party v. Ill. State Bd. of Elections*, 566 F.2d 586, 587 (7th Cir. 1977), *aff'd*, 440 U.S. 173 (1979).

## IV.  CONCLUSION.

For these reasons, the Court should enter a preliminary injunction or final judgment in Plaintiffs' favor against enforcement of Washington's unconstitutional Ban.

///

///

///

///

///

///

///

///

///

///

///

///

///

MOTION FOR PRELIMINARY INJUNCTION - 15
*HARTFORD V. FERGUSON*, No. 3:23-cv-05364-RJB

ARD LAW GROUP PLLC
P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

I certify that this memorandum contains 5,626 words, in compliance with the Local Civil Rules.

May 4, 2023.

Ard Law Group PLLC

By: _____

Joel B. Ard, WSBA # 40104
Ard Law Group PLLC
P.O. Box 11633
Bainbridge Island, WA 98110
206.701.9243
Joel@Ard.law
Attorneys For Plaintiffs

Motion for Preliminary Injunction

*Hartford v. Ferguson*, No. 3:23-cv-05364-RJB

Ard Law Group PLLC

P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243