# Exhibit A

```
 1
 2                  UNITED STATES DISTRICT COURT
 3              WESTERN DISTRICT OF WASHINGTON AT TACOMA
 4      _____
 5                                  )
        GABRIELLA SULLIVAN, et al.,  ) 3:22-cv-5403-DGE
 6                                   )
                       Plaintiffs,   ) Tacoma, Washington
 7                                   )
        v.                           ) September 23, 2022
 8                                   )
        BOB FURGUSON, et al.,        ) Motion Hearing
 9                                   )
                       Defendants.   ) 2:00 p.m.
10
11      _____

                   VERBATIM REPORT OF PROCEEDINGS
12             BEFORE THE HONORABLE DAVID G. ESTUDILLO
                    UNITED STATES DISTRICT JUDGE
13      _____
14
15
16
17
18
19
20
21
22
23
24          Proceedings stenographically reported and transcribed
                     With computer-aided technology
25
```

Angela Nicolavo - Court Reporter - 1717 Pacific Ave, Tacoma, WA - 253-882-3832

```
                         APPEARANCES


  For the Plaintiffs:       JOEL B. ARD
                            Ard Law Group
                            P.O. Box 11633
                            Bainbridge Island, Washington

                            WILLIAM BERGSTROM
                            PETER A. PATTERSON
                            Cooper & Kirk
                            1523 New Hampshire Avenue NW
                            Washington, DC


  For the Defendants        ANDREW R.W. HUGHES
  Ferguson and              Attorney General's Office
  Batiste:                  800 Fifth Avenue
                            Suite 2000
                            Seattle, Washington  98104-3188

  For the Defendants        ANN MARIE SUMMERS
  Satterberg and            DAVID J.W. HACKETT
  Cole-Tindall:             King County Prosecutor's Office
                            1191 Second Avenue
                            Suite 1700
                            Seattle, Washington

  For the Defendants        CHRISTINE M. PALMER
  Gese and Enright:         Kitsap County Prosecutor's Office
                            614 Division Street
                            MS-35A
                            Port Orchard, Washington

  For the Defendants        CALLIE A. CASTILLO
  Scott and Tillotson:      Lane Powell
                            1420 Fifth Avenue
                            Suite 4200
                            Seattle, Washington

  For the Proposed          ZACHARY J. PEKELIS
  Intervener Defendant      Pacifica Law Group LLP
  Alliance for Gun          1191 Second Avenue
  Responsibility:           Suite 2000
                            Seattle, Washington
```

1     THE COURT:  All right.  Thank you.  Anyone else?
2 Mr. Pekelis.
3     MR. PEKELIS:  Zach Pekelis on behalf of the proposed
4 intervener.  I agree fully with what Mr. Hughes and
5 Ms. Summers said.  I point out just to kind of tether to the
6 *Bruen* decision that it is not just that the Court is to look
7 at the historical context, but what does the Court do with
8 the historical context.
9   What the *Bruen* court instructed in several cases is
10 whether "modern and historical regulations impose a
11 comparable burden on the right of armed self-defense."
12 Whether that burden is comparably justified are central
13 considerations when engaging in an analogical inquiry.  It is
14 not that you look at the history.  You look at the modern law
15 and examine whether the benefits and burdens of the modern
16 law that is challenged are comparable to the historical
17 analogue benefits and burdens.  That's the classic type of
18 question on which discovery would be most helpful and indeed
19 necessary.
20     THE COURT:  All right.  Thank you.
21   First, as I indicated just briefly at the beginning, there
22 is no real motion in front of me to stay discovery.  There is
23 currently nothing that stops discovery.
24   Having reviewed the issue, I will give you my general
25 thoughts and then you could always decide if you really want

1  to file the motion.  I am going to give you what I think is
2  going to happen if you file the motion.
3      First, this is an issue many courts are dealing with
4  because most judges -- there might be some that are outliers
5  that are truly historians in their prior life or experiences,
6  but most judges are not historians.  We are trained to
7  research case law, do an analysis, provide our analytical
8  thinking as to what the issue may be, et cetera.  We are not
9  true historians, we are just not.  Quite frankly, chambers
10 staff that assists the judges, we don't hire historians
11 either.  They are usually individuals that are researchers
12 when it comes to case law and have good analytical skills and
13 writing skills.
14      It really puts courts just in a very difficult position to
15 analyze what the history is because that's not our
16 background, quite frankly.
17      This *Bruen* decision definitely is new.  In my mind, it is
18 really putting an emphasis on historical context.  I am going
19 to note one of the things it said right at the beginning as
20 we talked about *Heller* and what was being done in *Heller* and,
21 of course, they use that kind of analysis I think throughout
22 the rest of the decision.  In reference to *Heller*, they are
23 noting that in assessing the post-ratification history --
24 they are referring to the Second Amendment -- we look to four
25 different types of sources.

1       First, we reviewed how the founding era legal scholars
2   interpreted the Second Amendment in published writing.
3   Second, we looked to the 19th Century cases that interpret
4   the Second Amendment and found they universally support an
5   individual's right to keep and bear arms.  Third, we examined
6   the discussion of the Second Amendment in Congress and in
7   public discourse after the support as people debated whether
8   and how to secure the constitutional rights for newly freed
9   slaves, and we considered how post-Civil War commentators
10  understood the rights.  It was truly, from what I could tell,
11  historical research done by historians.  In essence, what
12  they were looking towards.
13      I will also point out -- let's see here -- what
14  Mr. Pekelis noted, and in addition to the quote that
15  Mr. Pekelis stated, after that the Supreme Court stated:  "To
16  be clear, analogical reasoning under the Second Amendment is
17  neither a regulatory straightjacket nor a regulatory blank
18  check.  On the one hand, courts should not 'uphold every
19  modern law that remotely resembles a historical analogue'
20  because doing so 'risks endorsing outliers that our ancestors
21  would never have accepted.'  On the other hand, analogical
22  reasoning requires only that the government identify a
23  well-established and representative historical analogue, not
24  a historical twin.  So even if the modern-day regulation is
25  not a dead ringer for historical precursors, it still may be

1   analogous enough to pass constitutional muster."
2         Given that, I think there does need to be some type of
3   discovery in finding out what historians on those issues that
4   I just kind of referenced, what historians would opine on
5   some of those things, what they find in their research.  So
6   it is very difficult for me to say, hey, there should be no
7   discovery on any of this.
8         Mr. Bergstrom, you and your colleague are welcome, if you
9   wish, to file a formal motion on this.  Maybe I am completely
10  wrong.  Maybe you point to some other reasoning in the
11  decision that somehow says no, you can just make decisions
12  without any further discovery.
13        Based on what I am reading right now, I don't think I
14  would agree with that. Again, you might be able to convince
15  me otherwise based on what you find, what you point to in the
16  language of the decision.  Right now, seems like it is
17  probably not likely, to be honest, that I would agree with
18  you.
19        Things can change, and I might change my mind if you point
20  to something that is very convincing.  Right now, it doesn't
21  seem to be there.
22        I think discovery does need to be had, some form of
23  discovery, to help the Court out with the historical contexts
24  of some of these issues. That is my general thoughts with
25  regard to discovery.

1     Likewise, same thing with the standing issue.  Too early
2  for me to say.  On the one hand, plaintiffs say, you know,
3  there is a real dispute here.  The representative plaintiffs
4  are no longer able to sell these magazines.  Likewise, the
5  other plaintiffs are not allowed to buy them, et cetera.
6  Arguably, there is standing.  Again, I haven't reviewed this
7  completely.  There might be some discovery that says
8  otherwise.  It is kind of hard to give you my thoughts as to
9  what I would do without further seeing a motion on that
10 issue.
11    The bottom line is, there is no stay at this point.
12 Because there is no stay, right now discovery is open.  I
13 will leave it to the parties if they want to file a formal
14 motion, as I indicated, for the Court to consider it a bit
15 further.  It is going forward at this point absent an order
16 from the Court that enters a stay.  That is presently not an
17 order the Court has entered.
18    Okay.  That is my thoughts on some of those issues.  The
19 other purpose for these status hearings, in addition to
20 talking about some of these issues and identifying the trial
21 dates, I want to make sure we have proper expectations.  One
22 of the things I do in most of my case -- this is a unique
23 case and more complicated than some of the ones we deal with.
24 I want to go on with my normal comments which is, first,
25 focus on professionalism and civility.  I have no doubt that

1  with regard to the current motions on behalf of King County,
2  Kitsap and Intervener Alliance, they are on my priority list.
3  I do hope to get to them on a sooner-than-later basis, but I
4  can't give you a date right now unfortunately.
5       All right.  Thank you.  Have a good rest of your
6  afternoon.  I appreciate you all being here and hopefully you
7  can enjoy the rest of your weekend.
8            MR. BERGSTROM:  Thank you.
9            THE COURT:  Thank you.
10                (The proceedings adjourned.)
11
12
13                    C E R T I F I C A T E
14
15
16     I certify that the foregoing is a correct transcript from
17  the record of proceedings in the above-entitled matter.
18
19
20
21  /s/ Angela Nicolavo
22  ANGELA NICOLAVO
    COURT REPORTER
23
24
25